**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED

JUL 1 6 2013  EMT
7-16-13 ea
THOMAS G. BRUTON
CLERK, U S DISTRICT COURT

| | |
|---|---|
| **BEATRICE FLEMING,** | 1:13-cv-05083 |
| **Plaintiff,** | Judge James F. Holderman |
| **V.** | Magistrate Judge Geraldine Soat Brown |
| **Avis-Budget, Attorneys Donald Nathan,** | |
| **Patricia L. Kuss, Patricia Hardiman** | |
| **Defendants.** | ) Jury Trial Demanded |

## COMPLAINT

The Plaintiff, Beatrice Fleming complains that the Defendants conspired together and violated

her Civil Rights and seeks redress and complains as follows:

## INTRODUCTION:

The defendant, Avis-Budget is a world-wide company that provides

transportation to clients in and around the Chicago and suburban areas. Avis-Budget is located

at 10000 Bessie Coleman Drive Chicago, Illinois 60666 near O'Hare Airport. The plaintiff

Beatrice Fleming is located at 1980 Lancaster Lane #205, Wheaton, Illinois 60189 complains

that the company is regularly engaging in racial discrimination against her. The plaintiff

(Beatrice Fleming) is an African-American, female, disabled, and in a protected class. The

plaintiff (Beatrice Fleming) previously filed a complaint of racial harassment, etc..., under Title

Seven and settled it with the defendant Avis-Budget in the Northern District Court of Illinois.

Therefore, the plaintiff, Beatrice Fleming is in a protected class that prevents retaliation from

her previous employer Avis-Budget (Fleming vs. Avis-Budget No. 09 cv. 856 (09 WC 22399

Illinois Worker's Compensation Commission) settled by Presiding Judge Robert Gettleman and

dismissed on February 22, 2010. Please note that the company retaliated by refusing to release the funds that were agreed upon.  The plaintiff, Beatrice Fleming was forced to return to court in December 2010 to have the funds released on January 19, 2011). The company insisted I release them from the Worker's Compensation injury I received on May 08, 2008 at their facility, and sign a statement verifying that I resigned from their company when in fact they terminated me for being injured.

The plaintiff, Beatrice Fleming was employed at Avis-Budget during the month of May in 2008. While in the course of performing her job a coworker recklessly ran over her right foot (right foot was pinned underneath the rear right side passenger wheel) and knocked her to the ground when the car made contact with the right side of her body. The incident occurred in Aurora, Illinois at the Avis-Budget facility in full view of her coworkers and at the front door of the facility. The plaintiff, Beatrice Fleming immediately requested medical assistance. She had to repeatedly demand a trip to the hospital. Eventually, her coworker (the same one who hit her) drove her to Good Samaritan Hospital in Downers Grove, Illinois (an average of 50 miles away).

## PARTIES:

The plaintiff, Beatrice Fleming immediately notified her company of the incident. The plaintiff, Beatrice Fleming timely filed a report for her injuries with her company Avis-Budget. She hired Attorney Donald Nathan to represent her in May of 2008. He reassured her that he was working on her behalf. The plaintiff, Beatrice Fleming requested that Attorney Donald Nathan file an emergency (19B) petition to allow her to receive medical attention for her injuries along with an incident (reoccurrence) that took place when the Plaintiff, Beatrice

Fleming returned to work in November of 2011. He emailed me and confirmed that he had

followed my instructions concerning the 19B petition. However, he explained that he did not

file the papers for the reoccurrence because it would be covered under the papers already filed

at the Worker's Compensation Commission. When I called the Worker's Compensation

Commission I discovered he had been untruthful with me concerning the 19B petition, and that

no information concerning the reoccurrence was on file at the Worker's Compensation

Commission.

Avis-Budget paid for limited medical services and refused to grant a MRI to

Physiotherapy & Associates of Elmhurst, Illinois to determine the extent of my injuries. Avis-

Budget refused to grant me medical provisions as covered under the Worker's Compensation

Act. The treatment facility of M&M Orthopedics had to refuse me treatment the first time I

arrived there because of their actions (two weeks after the injury). When I returned for a

rescheduled visit (one week) later the M&M Orthopedics was forced to call the Avis-Budget to

receive authorized payments for their services. Avis-Budget had not responded to their

previous request for payment authorization. At the same time while they were authorizing

payment for my medical services they were authorizing one of their doctor's to have my

medical services withdrawn (Dr. Mercier of Illinois Masonic Hospital in Chicago, Illinois). My

medical services were authorized in the middle of June and the letter I received in July was

dated in June. This was a clear indication that Avis-Budget was engaging in discriminatory

practices early on in the Worker's Compensation process.

The plaintiff, Beatrice Fleming returned to work on November 3, 2008 (without

restrictions) and worked one week before the she began experiencing sharp pains in her body

(reoccurring injury). The plaintiff, Beatrice Fleming requested physical therapy from the company and they refused to accommodate her (She requested physical therapy during (or around her work schedule) after work hours from her immediate supervisor Parris Jones who relayed the message from Human Resources that my request was denied. I also spoke with Human Resources (Eva Liss/Jamie Doucek) who confirmed that my request was denied).

Attorney Donald Nathan assured the plaintiff, Beatrice Fleming that the case was preceding and he was working on her behalf. When the plaintiff, Beatrice Fleming called the commission to check on the status of her case she discovered that he did not file the case until September of 2009. The attorney Donald Nathan was informed prior to every decision the plaintiff, Beatrice Fleming made. Somehow, it was not until the plaintiff, Beatrice Fleming exceeded her two doctor's rule (visit to Central Dupage Hospital on November 13, 2008 after returning to work on November 3, 2008/The plaintiff, Beatrice Fleming was referred to Midwest Orthopedics/Dr. Kathleen Webber/bills were refused and are unpaid/ Medicare and Medicaid had to provide for the limited care I received) that he explained more fully her rights to her in this area in detail. In addition, the plaintiff Beatrice Fleming did not originally hire attorney Patricia Lannon Kuss. When she questioned attorney Donald Nathan he said, " she was his coworker and they worked in the same office". He assured me everything would be fine.

I went into her office and was told to bring my documents in with me to her office. She gave me papers to sign and made copies of some of the papers I brought in for her to review. However, she did not return all of my documents. One was issued by my primary physician (doctor #2 Nina Kandel of Elmhurst Memorial Hospital) listing my injuries including my back.

We spoke on the phone on several occasions; and, she was very condescending in her attitude towards me.

Although Dr. Nina Kandel was my number two choice for medical care the referrals she made for treatment with the exception of Dr. Mark Sokolowski was denied or partially paid (ATI Physical Therapy bills unpaid/ She referred me for pain treatment to North Shore pain clinic and Dr. Webber's office) I have requested Attorney Patricia Kuss return my file, but as of this date she has not complied with my numerous requests. My dissatisfaction with the level of service provided to me resulted in the dismissal of Attorney Donald Nathan and Attorney Patricia L. Kuss.

I requested the service of attorney Patricia Hardiman (70 W. Washington suite 600 Chicago, Illinois 60604). She requested information concerning my medical condition. I was assured that she would make copies of the documents and return them to my possession. I made numerous phone calls and emails requesting the information be returned to me. She ignored my requests and refused to return the documents via copies, email, or scanning any of them via email to me. Some of the documents were needed for other serious medical and financial purposes. She called me in 2012 and stated that "a settlement offer had been made". We met at the Worker's Compensation Commission in November of 2012. I felt pressured to accept the settlement offer.

I went home and immediately the next day called her and informed her that many of my rights had not been addressed in the settlement offer and stated that I was not going to agree to accept the offer. Since that time I have been requesting to "have my day in court". She has refused to address my concerns for an appeal or which court to appeal my decision from the

Worker's Compensation Commission if I am dissatisfied with its outcome. She has been repeatedly demanding that I give her $5000 for depositions or else take the offer. I have tried to explain that I did not believe that the offer was in my best interest. I do not have $5000 because I am permanently injured and have been off work since November of 2008. I have repeatedly tried to get her to explain my rights and what other options are available to me. She has refused to comply with this request. She allowed me to read a copy of the settlement draft for Avis-Budget but she did not provide me with a copy. It was very distressing to the Plaintiff, Beatrice Fleming who once again refused to accept the terms of the offer. Attorney Hardiman basically stated that I would have to rely on Medicare and remain on Social Security to take care of my future needs.

I am in pain on a daily basis and wanted to address my permanent medical issues. Attorney Hardiman stated that I have Medicare and they can pay for it. She also states that she will work with the companys that I owe medical bills and will work to compromise a deal to have the outstanding bills reduced. I informed her that I am not supposed to pay any medical bills and that my insurance with the State of Illinois now has a $400 monthly "spend down" because of this situation. Prior to receiving these injuries it was a "zero dollars" per month.

To add insult to injury she states, "We have protected you so that you can continue to receive your social security check". Beatrice Fleming, the plaintiff has tried to express her concerns over the lack of a second Workers' Compensation case being filed on her behalf on numerous occasions to all the attorneys involved in this case. Beatrice Fleming explained to Attorney Patricia Hardiman that she was displeased with the "take or leave it" deal placed on

the table. Attorney Patricia Hardiman also repeatedly stated that I did not have any other options available and that I had to take it or receive zero dollars.

We have been on the "merry go round "for several months and she has refused to address any of my concerns to the Worker's Compensation Commission. When she could not pressure me into receiving the so-called settlement offer she said she was going to withdraw from the case. I stated that was okay with me. She continuously requests another extension as opposed to trying to work out a viable solution to my needs. I spoke with her on July 15 and she stated, " the judge is working between the Wheaton and Chicago location and that he has a lot of work and is going on vacation this summer and that the case will be "probably extended" until July or August". Attorney Hardiman also stated, " she still is officially on the case and has not filed the withdrawal papers, and that she does not know if the judge will let her withdraw and that I should find another attorney to represent me and have him contact her". I was at the Worker's Compensation Commission in a meeting with her on July 9, 2013 when she stated she was withdrawing from the case. I saw her go to the area where the papers are located and I believed that she was filing the papers at that time. It appears as if I do not accept the offer she is going to keep extending the time in an attempt to wear me or my patience out.

I explained to her that I did not like being pressured into making serious decisions. I felt that her statement was aimed at drawing fear and just another pressure tactic to make me accept the offer ($20,000 which changed to $19,300 minus $3700 to previous attorneys for work they did not perform minus out of pocket outstanding medical bills). My concerns of permanent injury, future medical bills, reoccurrence of my injury which would permit Doctor Kathleen Webber's services to be paid (she stated that my other attorney was supposed to file

a petition on my behalf. I went to the emergency room at Central Dupage Hospital after

returning to work in November and was referred to Dr. Kathleen Webber of Midwest

Orthopedics and returned to ATI Physical Therapy), permanent injury, vocational rehabilitation

etc... went ignored. She focused only on the fact that I did not fully disclose the nature of my

injuries at the emergency room at Good Samaritan Hospital. She further stated the doctor did

not write everything down in the records. I told her that I had gotten hit by a car and that the

right side of my body was in pain. She consistently drilled me and refused to allow me to

address the questions she was presenting to me. I felt as though the emotional duress was

preventing me from making a good decision concerning my injuries.

## **JURISDICTION AND VENUE**

The Defendants are in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§

2000): Age Discrimination Act of 1975: Equal Protection Clause of the 14th Amendment: 42 U.S.C

§§ 1983 (1996) (Title 42, § 1983 of the U.S. Code provides a device for seeking amends for an alleged

deprivation of a litigant's federal constitutional and federal statutory rights by persons acting under color

of state law).: Retaliation for filing a prior lawsuit (right to sue letter issued by the Equal

Employment Commission-see 09-CV-856 Judge Robert Gettleman). As a result, jurisdiction is

invoked pursuant to 28 U.S.C. §§ 1331 and 1334. Plaintiff seeks declaratory relief pursuant to

28 U.S.C. §§ 2201 and 2202.

The following jurisdictional statutes apply to 42 U.S.C. § 1983 litigation in federal court: 28

U.S.C. § 1343(a) (3), 1, and 28 U.S.C. § 1331, 2 which is the general federal question statute. Statute 1331

gives jurisdiction in cases raising a federal question. § 1343(a) (3) limits federal jurisdiction to suits

involving "equal rights." Federal courts have jurisdiction over federal claims in 42 U.S.C. § 1983 suits

and they also have jurisdiction to judge state law claims that arise out of "a common nucleus of operative

fact." Supplemental jurisdiction under 28 U.S.C. § 1367 permits both pendent claim and pendent party jurisdiction.[3] 28 U.S.C. § 1367 changed "the preexisting law in that it makes supplemental jurisdiction mandatory, not discretionary."

## Action "Under Color of Law"

Title 42, § 1983 of the U.S. Code imposes liability only upon those individuals and entities that act "under color of law." In a § 1983 case, the under-color-of-law permits plaintiffs to sue governmental employees and entities for conduct pursuant to their governmental duties and powers.[4] "Plaintiffs" may sue private actors who are "linked" to state officials in different ways, under color of law. In response, the Supreme Court has determined that: First, any state action under the Fourteenth Amendment is action under color of law.[5] Second, when the defendant is not a government employee, but is somehow linked to the government, courts.

## Joinder

**SECTION 1983 LITIGATION** includes joint action, an intertwined relationship, state encouragement, or a public function performed.[6] When a plaintiff sues a governmental entity, such as a city or county, for a constitutional violation arising from its policy or custom, action under color of law is present because the entity was created by state law.[7]

A corporation is a governmental entity if the government created it to further its objectives and retains permanent control over it.[8] A governmental entity acts only through its agents or employees; its employees also act under color of law. Government employee's act under color of law when performing their duties, whether they act in compliance with state law, contrary to it, [9] or exercise professional discretion.[10] Actions pursuant to state law easily reveal the link between the employee and the state. Actions contrary to state law are also actions under color of law because employees are given the power to act on behalf of the government.[11] Similarly, state employees or contractors who exercise professional judgment during the course of their employment act under color of law. Although the assertion of independent judgment may appear to suggest autonomy, professionals, such as prison physicians, exercise this judgment on behalf of the state, [12] in furtherance of the goals of the state.

Governmental officials generally act under color of law because the state has given them the power to act; the link to the state is obvious. When individuals do not work for the government, the under-color-of law focuses on the connection between the challenged action and the government. The question becomes whether there is a sufficient link between the private individual and the state. The Supreme Court has articulated standards to determine whether there is a sufficient connection between the individual and the government such that the action by the individual nevertheless constitutes action by the government: joint actions, intertwined relationships, state encouragement, and public function.

## *Joint Actions*

When the challenged action is committed by a person who does not work for the government, the under-color-of-law inquiry focuses on the nature of the connections between the private person and the state *(Polk County*, 451 U.S. at 325.). In *Lugar v. Edmondson OilCo.,* [13] the Supreme Court held that a creditor who used a state prejudgment statute had acted under color of law because, in attaching the debtor's property, with help from the court clerk and sheriff, the creditor had further used state power. The assistance from state officials made the creditor a joint participant in state action.[14]Determining whether a private person acted jointly or was intertwined with a state actor thus requires analysis of all the links between the private person and the state. Except for the prejudgment attachment process, the Court has required obvious ties to the state.

## *State Encouragement*

The Supreme Court has determined that state action is present when judges are asked to enforce or authorize a discriminatory practice. Although application of the state encouragement doctrine does not generally arise in § 1983 lawsuits, the doctrine follows the contours of its state action inquiry. This doctrine has been used, for example, to bar a court from enforcing a racially restrictive covenant and allowing peremptory challenges to be used in a discriminatory manner. In both these areas, the Court recognized that private discrimination would not be possible without judicial power. Because the use of

judicial power in these contexts would sanction private discrimination, the Fourteenth Amendment prohibits judges from using their power in this manner.

## Deprivation of Selected Constitutional Rights

The due process clause of the Fourteenth Amendment covers federal claims enforceable through 42 U.S.C. § 1983: (1) claims for the deprivation of certain specific rights denoted in the Bill of Rights and made applicable to the states through incorporation; (2) claims under the substantive component of the due process clause "that bars certain arbitrary, wrongful government actions, 'regardless of the fairness of the procedures used to implement them'"; and (3) claims under the procedural component of the due process clause that prohibits the deprivation of life, liberty, or property without fair procedure.[15] When a plaintiff asserts the violation of a right specifically identified in the Bill of Rights or protected under the substantive component of the due process clause, the violation is complete at the time of the challenged conduct and the § 1983 remedy is available regardless of remedies provided under state law.[16] In addition to these Fourteenth Amendment rights, a violation of the dormant commerce clause is actionable under § 1983.[17] **The erroneous deprivation must have been foreseeable; the predeprivation process practicable; and the challenged conduct "authorized."**

### *Procedural Due Process Claims*

A claim based on a denial of procedural due process challenges the constitutional adequacy of state law procedural protections accompanying an alleged deprivation of a constitutionally protected interest in life, liberty, or property. It is not the deprivation itself that is actionable, but only the deprivation without the requisite process.

## SECTION 1983 LITIGATION

This litigation covers the alleged deprivation of a constitutionally protected interest in life, liberty, or property.[18] While liberty interests may be derived directly from the due process clause of the Constitution [19] or be created by state law,[20] property interests "are created from an independent source such as state law. . . ." The Supreme Court decided *Monroe v. Pape*. In *Monroe*, the Court expressed three purposes for passage of the statute: (1) "to override certain kinds of state laws"; (2) to provide "a

remedy where state law was inadequate"; and (3) to provide "a federal remedy where the state remedy, **though adequate in theory, was not available in practice."** The *Monroe* Court decided issues that allowed 42 U.S.C. § 1983 to become a statute for enforcing rights secured by the Fourteenth Amendment. First, it held that actions taken by state governmental officials, even if contrary to state law, were nevertheless actions taken "under color of law." Second, the Court held that injured individuals have a federal remedy under 42 U.S.C. § 1983 even if the officials' actions also violated state law. According to Congress state courts could not protect Fourteenth Amendment rights because of their "prejudice, passion, neglect, [and] intolerance." *Monroe* opened the door to the federal courthouse to secure constitutional litigation against state officials. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

## State of Mind

The substantive due process component of the Fourteenth Amendment protects against "arbitrary action." [21] For an action to be arbitrary it must "**shock the conscience**"; [22] In *County of Sacramento v. Lewis*, the Court explained that determining shocking conduct depends on the type of substantive due process claim asserted. For example, when prison officials are deliberately **indifferent to a pretrial detainee's serious medical needs,** their actions "shock the conscience"; [23] but when police officers engage in a high-speed pursuit that results in the death of one of the suspected offenders, their actions are shocking only if they acted with malice, that is, with "intent to harm the suspects physically or to **worsen their legal plight."** [24] Two factors aid courts in considering whether conduct is shocking: whether there was time for reflection and whether there were competing governmental needs: Liability for deliberate indifference to inmate (medical) welfare rests upon the luxury enjoyed by prison officials of having time

to make unhurried judgments, upon the chance for repeated reflection, largely unplace where Mitchell was." *Id.* at 840.).

### Deprivation of Federal Statutory Rights Maine v. Thiboutot:

The "and laws" phrase in § 1983 affords a remedy for the deprivation of some federal statutory rights, as well as federal constitutional rights. In *Maine v. Thiboutot,* the State of Maine and its commissioner of human services had **allegedly deprived certain individuals of** welfare **benefits** to which they were entitled under the Social Security Act. The Supreme Court, emphasizing that Congress had not attached any modifiers to the phrase "and laws," held, over a strong dissent, that the phrase "means what it says" and that "the plain language of [§ 1983] undoubtedly embraces [the] claim that [state officials] violated the Social Security Act." The Plaintiff, Beatrice Fleming was legally entitled to receive Worker's Compensation benefits and all of its provisions as provided for under the state laws of Illinois.

## Civil Rights Act of 1964(Title VII) and *Fourteenth Amendment Protections*

The Civil Rights Act of 1964 prohibits racial and other discrimination in **employment**, education, and use of public accommodations and facilities. After the Plaintiff, Beatrice Fleming was run over by a four wheeler by her coworker she was discharged from her position. Avis-Budget did not attempt to locate suitable employment for the Plaintiff, Beatrice Fleming within its company. Equal Protection Clause was the basis for such historic doctrines as "separate-but-equal" in Plessy v. Ferguson; it has also served as the basic constitutional protection against racial discrimination by government entities in modern civil rights JURISPRUDENCE. Avis-Budget used the Worker's Compensation Commission to continue in its act of revenge against the Plaintiff, Beatrice Fleming.

The Civil Rights Act of 1991 and other federal statutes permit civil actions for a deprivation of civil rights, including violations of constitutional protections, violations of civil rights legislation, or any other antidiscrimination law. Victims of racial discrimination may recover monetary damages, including

PUNITIVE DAMAGES and attorney's fees in appropriate circumstances. Victims may also seek an injunction or other equitable remedy. The Civil Rights Act of 1964 (Pub.L. 88-352, 78 Stat. 241, enacted July 2, 1964) outlawed major forms of discrimination against blacks and women, including racial segregation in the United States. It ended unequal application of voter registration requirements and racial segregation in schools, at the workplace and by facilities that served the general public ("public accommodations").

## Title VII

Title VII of the Act, codified as Subchapter VI of Chapter 21 of 42 U.S.C. § 2000e [2] et seq., prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin (42 U.S.C. § 2000e-2[31]). The Equal Employment Opportunity Commission (EEOC) as well as certain state fair employment practices agencies (FEPAs) enforce Title VII (see 42 U.S.C. § 2000e-4[31]). Title VII has been supplemented with legislation prohibiting pregnancy, age, and disability discrimination (Age Discrimination in Employment Act and Americans with Disabilities Act of 1990). Plaintiff, Beatrice Fleming was under doctor's care (Disability) for injuries received from car accident when she was wrongfully discharged and left without any means of finding suitable employment. The Plaintiff, Beatrice Fleming was issued a right to sue letter by the EEOC Commission and the case was accepted by the Northern District Court and settled in November of 2010. Avis-Budget continued in its acts of retaliation at the Worker's Compensation Commission.

## *Federal preemption occurs when state law conflicts with federal law.*

The Supremacy Clause located within Article VI of the U.S. Constitution dictates that federal law is the "supreme law of the land". This means that judges in every state must follow the Constitution, laws, and treatises of the federal government in matters which are directly or indirectly within the government's control. The doctrine of preemption is based on the Supremacy Clause, federal law

preempts state law, even when the laws conflict. Federal Courts can require a state to stop certain behavior it believes interferes with, or is in conflict with, federal law.

The federal government's powers under the Supremacy Clause permit them to create, regulate, and enforce the laws of the United States. Among those powers, the federal government has certain *express* (or "enumerated") powers which are specifically spelled out in the U.S. Constitution, including the right to regulate commerce, declare war, levy taxes, establish immigration and bankruptcy laws, and etc… The federal government has *express* powers under the U.S. Constitution, it also has *implied* powers, or powers not specifically mentioned in the Constitution. This was the decision in the landmark Supreme Court case of <u>*McCulloch v. Maryland*</u>. For example, the Constitution does not expressly mention the right to privacy, or the right of people to adopt, or seek an abortion, however, these rights can be *inferred* by the Constitution itself, or from the later amended <u>Bill of Rights</u>.

## **<u>Common Allegations</u>:**

1.  The violations occurred in the Northern District of Illinois; therefore, venue is proper in this district pursuant to 28 U.S.C. §§1391.

2.  The Plaintiff, Beatrice Fleming contacted her immediate supervisor, Parris Jones, and the office manager (Eva Liss/Jamie Doucek), human resources, and the Office of Equal Employment Opportunity Commission and made reasonable efforts to resolve the discrimination. Avis-Budget stepped up its discrimination efforts against the Plaintiff, Beatrice Fleming when it cut off all of her benefits that would have allowed her to return to work (Original Date of injury May 08, 2008/reoccurrence November 08, 2008) and maintain her livelihood which she has been without until the present day of June 2013.

3. The Plaintiff, Beatrice Fleming has been left to provide for herself without any financial resources from Avis-Budget who failed to fire the employee after he ran over her with a four wheeler GMC vehicle in plain view of her coworkers (The Plaintiff, Beatrice Fleming views the situation as attempted murder in which the company turned a blind eye towards-he regularly drives through the streets and expressways over 75 miles per hour- he arrives in the O'Hare Airport Facility from Naperville in 15 minutes-an average of 40-50 miles with construction on the expressways).

4. In addition, Avis-Budget has resisted (retaliation) all attempts to reasonably resolve the Worker's Compensation petition filed on behalf of the Plaintiff, Beatrice Fleming. The Plaintiff's source of income has been cut-off and her medical needs neglected. She has been forced to receive Medicare which only covers 80% of expenses. The State of Illinois Medicaid covers the rest of her expenses after the $400 monthly quota has been met. This is clearly a case of abuse when the state and the Plaintiff are being forced to pay for medical bills that should be covered under the Worker's Compensation Act. Her attempt to have her life and livelihood restored has been denied.

5. The Plaintiff, Beatrice Fleming complains that she has been left without the ability to walk a few blocks. She must use transportation for the elderly and disabled. She cannot regularly walk upstairs and she has to prolong trips to the grocery store etc...

6. The Plaintiff, Beatrice Fleming has to rely on pain killers and to complete simple chores and is unable to regularly clean her house or do simple tasks on a regular basis. Her entire life physically and socially has been taken from her.

7. The Plaintiff complains that she was singled out because of her race and subject to a hostile legal environment. She further complains that the Attorney Patricia Hardiman expressed her anger at the Worker's Compensation Commission with disparaging remarks concerning Barak Obama the President. This made the Plaintiff, Beatrice Fleming helpless, and this caused the Plaintiff to believe that because of her views she was not providing her with the best or a reasonable degree of her legal services.

8. In retaliation for filing the Complaint in the Northern District Court before Judge Robert Gettleman the Plaintiff, Beatrice Fleming was left without any financial or medical means to care for herself. This clearly had to be a situation that was foreseeable by Avis-Budget, and all the defendants involved who did not take any legal steps available to correct the situation.

9. Racial harassment is unlawful and covered by the Federal Courts. Its actions should not be tolerated at any level by the Federal Government in the workplace or schools. The Attorneys Donald Nathan, Patricia Kuss, and Patricia Hardiman joined in the harassment of the plaintiff, Beatrice Fleming when they failed to provide or protect her with reasonable legal considerations concerning her plight after she hired them and they agreed to service her in this area. The plaintiff, Beatrice Fleming is requesting that this lawsuit be permitted to go forward with the above parties being listed as defendants (joinder).

10. The Plaintiff was subjected to Age Discrimination when she did not receive the same services as other whites in her age category. Avis-Budget was fully aware that the age of

the Plaintiff, Beatrice Fleming and her physical condition would limit her possibility for future employment with other companies.

11.   The Plaintiff's real injuries were not visible to the naked eye. The Plaintiff, Beatrice Fleming received a MRI during February of 2011 that revealed she has a herniated disc in the L5 region of her back that is pressing on her nerves. She has received cortisone shots that provided temporary relief to her right hip (she now suffers with Osteoarthritis due to this accident (Dr. Mark Sokolowski/bone surgeon) and not to her back area. The doctors performing the procedure required the Plaintiff, Beatrice Fleming to give her informed consent that the pain reliever injection process could leave per paralyzed. She has since rejected the pain relievers for fear of these actions resulting in her becoming paralyzed.

12.   The acts by the Defendants were willful, reckless, and malicious acts of unlawful discrimination against the Plaintiff, because of her race and age, in violation of Title Seven of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000).

13.   As a result of the Defendant's actions the Plaintiff has suffered emotional distress, inconvenience, and consequential damages. She has also been denied  proper medical care resulting in her injuries not being properly treated as a result she has suffered long term employment loss because of the discriminatory actions of the defendants.

14.   The Plaintiff, Beatrice Fleming requests the Northern District Court of Illinois allow this petition against the defendants to precede for the above mentioned reasons.

## **PRAYER FOR RELIEF:**

The Plaintiff requests the Honorable Judge to enter judgment in her favor, and, against the Defendant, and enter a judgment ordering the following relief:

1. A written apology from the Defendants;

2. Compensatory Damages of $350.000;

3. Punitive Damages;

4. Permission for Joinder of the Defendants;

5. Injunctive Relief against the Defendants to stop all discriminatory behavior

   against the Plaintiff;

6. And all relief the Court sees as just.

### JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all of the issues of law raised by the allegations in this

complaint.

Respectfully Yours,

Beatrice Fleming, ProSe

July 17
~~June~~___, 2013

**Footnotes:**

1. 28 U.S.C. § 1343(a) (3) (1993) provides as follows:
(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

2. 28 U.S.C. § 1331 (1993) provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

3. 28 U.S.C. § 1367(a) (1993) provides as follows:
[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

4. Tennessee v. Garner, 471 U.S. 1, 5–7 (1985) (police officer and city were sued for use of deadly force).

5. West v. Atkins, 487 U.S. 42, 49–50 (1988); Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982). Action "under color of law," however, would not constitute state action if a court were to interpret the "under color of law" element to mean that the person merely acted "'with the knowledge of and pursuant to [a] statute.'" *Id.* at 935 n.18 (quoting Adickes v. Kress & Co., 398 U.S. 144, 162 n. 23 (1970)).

6. Martin A. Schwartz & John E. Kirklin, 1A Section 1983 Litigation: Claims & Defenses, § 5.10, at 520 (3d ed. 1997).

7. Monell v. Department of Soc. Servs., 436 U.S. 658, 690–91 (1978).

8. *Lebron*, 115 S. Ct. at 974 (holding that the National Passenger Corporation, known as "Amtrak," is a governmental entity created by Congress).

9. Monroe v. Pape, 365 U.S. 167 (1961), *rev'd on other grounds*, Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).

10. *West*, 487 U.S. at 49–50.

12. *Monroe*, 365 U.S. at 176, *rev'd on other grounds*, Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).

13. 457 U.S. 922 (1982).

14. *Id.* at 937. The Court explained that in this context the alleged "deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Id.* In a footnote, the Supreme Court stated that its analysis was limited to prejudgment seizures of property. *Id.* at 939 n.21.

15. Zinermon v. Burch, 494 U.S. 113, 124 (1990) (quoting Daniels v. Williams, 474 /U.S. 327, 331 (1986)).

16. *Id.* at 125.

17. Dennis v. Higgins, 498 U.S. 439, 450–51 (1991).

18. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). *See, e.g.,* Paul v.Davis, 424 U.S. 693, 712 (1976) (holding that "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law").

19. *See, e.g.,* Washington v. Harper, 494 U.S. 210, 221–22 (1990) (due process clause confers on prisoners a liberty interest in being free from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493–94 (1980) (due process clause confers on prisoners a liberty interest in not being involuntarily committed to a state mental hospital).

20. Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state law created a liberty interest in a "shortened prison sentence" that resulted from good time credits).

21. County of Sacramento v. Lewis, 523 U.S. —, 118 S. Ct. 1708, 1716 (1998); *see also* Collins v. City of Harker Heights, 503 U.S. 115, 130 (1992) (holding that city's alleged failure to train or warn sanitation department employees was not arbitrary).

22. *County of Sacramento*, 118 S. Ct. at 1717. Justice Souter authored an opinion joined by five Justices: Chief Justice Rehnquist and Justices O'Connor, Kennedy, Ginsburg, and Breyer. He stated that when a plaintiff challenges a "specific act of a governmental officer," rather than legislation, *id.* at 1716, the plaintiff must show that the act "shocks the conscience" to establish a substantive due process violation. *Id.* at 1717. Justices Kennedy and O'Connor, however, in a concurring opinion, stated that "the reasons the Court gives in support of its judgment go far toward establishing that objective considerations, including history and precedent, are the controlling principle, regardless of whether the State's action is legislative or executive in character." *Id.* at 23. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Daniels v. Williams, 474 U.S. 327, 333 (1986).

24. *Id.* at 1720.